The last case of the day is case number 4-24-0032. Sean Rylatt, et al. versus Dr. Dennis Christensen. Council, could we have appearances? First, for the appellant. Good afternoon, Your Honor. Joan Mannix on behalf of plaintiffs appellants. All right, and then for the appellees. And as you're stating your appearances, if you could indicate the order of argument, if argument is going to be split and the time that each will argue. Yes, Your Honor. Good afternoon. Patricia Hall on behalf of the appellees, the Rockford Family Planning Center, and Dr. Dennis Christensen. I will be splitting my time with for the City of Rockford, 10 minutes each. All right, thank you. And Mr. Rubin? Yes, and good afternoon. Jacob Rubin with the Appellees City of Rockford and Rockford Zoning Board. Thank you. Ms. Mannix, you may proceed with your argument. Thank you, Your Honor. My name is Joan Mannix and I represent the plaintiffs appellants, all of whom live in close proximity to Dr. Christensen's property, which is the, which is at issue in this case. Sean and Lisa Rylot live within 550 feet of the property. Janet Saviano and Lisa Lotzer live within 1200 feet of the subject property. That information is relevant to the issue of standing, which was the basis, the lack of standing of which was the basis for the decision of the RZBA. In order to establish standing, my clients need to establish that they have special damages, distinct palpable, barely traceable to the defendant's actions, likely to be prevented or redressed by the requested relief. In this case, the record establishes that there was, that all of my clients were subject to increased noise, increased traffic, and reduced, and the likelihood of reduced property values as a consequence of the special use permit allowed to Dr. Christensen and his practice. All of those consequences are fairly traceable to the defendant's use. They were all effects expected and directly related to defendant's controversial abortion clinic use of the property. The issue of standing is also arises with regard to count two of our complaint based on 65 ILCS 511-13-15. Under that count, plaintiffs have standing as a matter of law. The statute expressly provides that any owner or tenant of real property within 1,200 feet in any direction of the property at issue who shows that their property or person has been substantially affected by the alleged violation, in addition, may seek to abate or otherwise seek appropriate action. I am paraphrasing, appropriate action to protect against the unlawful use and abate the violation. So, the, the, with regard to count two, the owners have argued that there's no actual code violation against which the municipality Rockford failed to act, but that's not true. Here, there was a host, there was a evidence of a host of code violations that Rockford failed to address. Those include the numerous violations of the special use permit, which established a non-conforming use subject to all provisions of the Home Occupation Ordinance. Dr. Chin, in this case, who was originally granted the special use, was allowed a special use to, and I quote, re-establish a non-conforming use per home occupation of a medical nature subject to all provisions of the Home Occupation Ordinance. Council, may I ask a question? Of course, Your Honor. Thank you. Do we have the special use permit that Dr. Chin obtained? We do not, Your Honor. Do we have any pre-existing special use permit that Dr. Dow obtained? We do not, Your Honor. Do we know what any of the terms or conditions, restrictions, or limitations on that special use permit were? The evidence on that issue, albeit without the actual permit in front of being available, the special use permit being available, was that it was to, and I quote, like I said, well, I don't want to keep repeating myself, was to establish a non-conforming use of a home occupation medical nature. But we do not have any of the SUPS or any of the other documentation pursuant to which Dr. Chin and Dr. Dow conducted their medical practices at that location. The evidence from the record would indicate that Dr. Dow was a sole practitioner, chiropractor, who worked from his home? That is absolutely correct, Your Honor. And the same is true with Dr. Chin. Dr. Chin, likewise, was a sole practitioner, chiropractor, working from his home? That is correct, Your Honor. According to his application, he took patients by appointment only? That is also correct, Your Honor. Okay. And that ties in with our arguments that the special use permit is not a valid basis for justifying the departure or for justifying the use, the current use, of the property. Among other things, and our brief goes into this at great length, the special use permit required compliance, among other things, again, the testimony regarding the SUP that Dr. Chin was granted, because we don't have it, indicated that he was required, pursuant to the SUP, to comply with the home occupation ordinance in effect at the time. And there is a plethora of evidence. I don't want to keep going if you want to ask me a question. I'm sorry. When Dr. Chin submitted his initial application, he asked to establish a basis for a special use permit, a non-conforming use, correct? That is correct. Somebody in red changed that to re-establish along with some other red lettering. Was there ever any indication who did that or where that came from? I believe that that was done by Scott. I honestly don't remember, Your Honor. I'm sorry. I can look that up and find you. I don't remember any testimony establishing who actually did that. So the form actually became the re-establishment of a special use permit? Correct, Your Honor. Okay. The inference then being that Dr. Daub then must have had a special use permit himself for a home occupation? Correct, Your Honor. In the documents that Dr. Chin submitted, his purpose, he said, was for a chiropractic practice. That's correct, Your Honor. The zoning board or the zoning officer put it within a category of home occupation of a medical nature? Correct, Your Honor. Okay. And that's the classification? Correct, but not the particular use? Correct. Allowed? Under the zoning ordinances applicable, even with if you're within the same classification, if the use changes, then you still have to go back through the SUP permitting process, do you not? That is absolutely correct, Your Honor. Okay. And what we have here is by the zoning board's determination, the re-establishment of a special use permit under the same classification, but the use of which has changed? That is correct, Your Honor. Okay. Is there any dispute factually that the use being proposed is in any way similar to a chiropractic, a one-person chiropractic office by appointment only? There is no factual dispute that they are dissimilar. Under the ordinance that existed at the time, the home occupation applicant needed to be the owner of the home who was asking to conduct some form of limited business from the home. Correct, Your Honor. Mr. Capovilla has repeatedly referenced the fact that we can't really pay attention to or worry about any of these new restrictions that might exist under the more recent ordinances because this is a lawfully established non-conforming use that's been in existence for a long time, correct? That was his position, yes, Your Honor. If that's the case, then we are bound by the ordinances that were in existence at the establishment of the long-standing non-conforming use. Agreed, Your Honor. Okay. I was trying to find the wording of the 1981 zoning ordinance as to what exactly the language was. If you happen to have it, that would be great. I'm looking for it, Your Honor. Thank you. Thought I had it right here. I apologize. Anyway, I don't want to take up your time. Go ahead. I'm sorry. I apologize. I'm just following up on the point that you've made, Your Honor, is the position that all of this departure from what was previously allowed under the zoning ordinance was somehow grandfathered in as a prior legal non-conforming use is without any supporting evidence at all. There was certainly no evidence at all that either Dr. Daub or Dr. Chin was allowed these departures or that they engaged in non-conforming uses that somehow justified Dr. Christensen and his clinic's departures from the restrictions on their land use. Anyway, go ahead. I'm sorry I got you sidetracked. That's okay. No problem. Thank you for the clarification. We demonstrated in our brief that the clinic did not comply with the sub in numerous respects because there were at least two non-resident employees who were working at the clinic. They discounted Dr. Christensen as being an employee. However, Dr. Christensen was required to supervise the administration of medication by the registered nurse employee of the clinic. There was nothing I was able to find in the Illinois statute suggesting that an RN may independently prescribe medication and not act under the supervision of a physician. Further, the ROC rezoning ordinance requires that the immediate family member residing at the premises be employed by the business plus one non-family member. The owners argue that there was here the alleged permanent member of the household was an employee of Dr. Christensen. She was a clinical or a clerical employee essentially and she had a one-year lease. She was not a permanent resident. Mr. Capovilla's conclusion without ever having seen the lease and even knowing that it was a one-year lease that she was somehow a permanent resident was completely unsubstantiated by the record. I'm sorry, go ahead. This is we're reviewing a decision from the Rockford Zoning Board of Appeals, is that correct? That is correct, your honor. It seems to me that the use of this property now by Dr. Christensen is substantially different than the special use permit under the two prior doctors who lived and worked there. But my question is, well I can better way to put it, how much wiggle room is there in the adjudicators, the Zoning Board of Appeal and deciding this question? Maybe another way to put it is how wrong do they have to be in their assessment of how the special use permit previously in existence still applies? How wrong do they have to be before we can jump in and say, no you just can't do that anymore? As opposed to maybe the question is what deference are they due, if any, on the determination to what extent the current use can be shoehorned into the prior uses permitted under the special use permit? That to the extent that question involves statutory interpretation, they're entitled to no wiggle room. To the extent that it relates to a factual determination, they're entitled to fair amount of wiggle room under a clearly erroneous standard. Well this is a factual determination, is it not? Whether the current use is consistent with the special use permit as they were given to the two prior physicians? To some extent, but there is no question that the prior use was subject to the requirements of the Home Occupation Ordinance. In fact, the defendants don't even argue that they complied with any of the requirements. We've laid out a lot of violations of the Home Occupation Ordinance that was a condition of the defendants failed to comply with. Is that Home Occupation Ordinance fully applicable to the current claimed use of special use permit by Dr. Christensen? It was incorporated into the SUP, yes your honor. And has, have the defendant at police ever denied that that applies a trial court before the zoning board? I don't believe they have denied it applies. I think they've just sort of argued, so what? I'm not really sure what their argument is in that regard, frankly. There seems to be a suggestion that there is something else when Dr. Chen received the SUP. There was something else that they got that another category under which these kinds of departures from the Home Occupation Ordinance might be justifiable. And that is that Dr. Christensen was given, he had a legally non-conforming use, but they've made no attempt to show that that that there was some legally non-conforming use and there is no evidence at all on the record that either Dr. Daub or Dr. Chen had some sort of legally non-conforming use that would somehow justify the just the departures of of the use by Dr. Christensen and his clinic from the requirements of the Home Occupation Ordinance or any of the other requirements to which they were subject. They, there's, the defendants seem to suggest there's some sort of catch-all legally prior non-conforming use, but there's no evidence in the record that substantiates that argument. So, and we've laid out in our briefs, and I'm not keeping track of the time, but we've laid out in our briefs at pages 10 through 12 of our opening brief the numerous ways in which the current use departs from the special use permit and the requirements under which Dr. Daub and, apparently Dr. Daub and Dr. Chen used the property, which included, among other things, only 20% of the residents could be used. Dr. Christensen's use includes the entire first floor of the property, so at least 50%. There needs to be a permanent resident of the property involved in the business. In this case, the only thing that, the only evidence is that the alleged permanent resident of the property had a, was a clerical employee of the business with a one-year lease. The other issue, which I've also mentioned, is Dr. Christensen, the two people are the clerical employee and the nurse who, the clerical employee alleged, is alleged, it's alleged to be her quote-unquote home, and the nurse is alleged to be the single permissible employee, but Dr. Christensen necessarily had to be an employee of the practice because the RN couldn't prescribe medication, and this is a medication abortion clinic without his supervision. It had to, the use has to be incident to the current resident's home business, which must be conducted within the residence and not any accessory structures. The evidence was that there were, that that was also not complied with. Ms. Mannix, you are out of time. Why don't you go ahead and wrap up? Okay, thank you, Your Honor. We, we have standing. We demonstrated the harms that our clients were subject to. The record demonstrates very conclusively, and really in some respects without dispute, that the use by Dr. Christensen does not conform with the prior use by Dr. Chin or Dr. Daub, and we've outlined the ways in which that use is inconsistent, and for those reasons, we ask the court to reverse the decision below. Sorry, we'll have time and rebuttal. Ms. Hawley, you may proceed with your argument. Hi, yes, good afternoon, Your Honors. I'm here on behalf of Dr. Dennis Christensen at Rockford Family Planning Center. My intention this afternoon is to address the standing issue, and then, of course, the issue regarding the motion to dismiss the private action against my clients at the circuit court level, and Mr. Rubin was to address the issues that have actually been focused on by Your Honors this afternoon with Ms. Mannix, so I do want to first say that we kind of breezed past standing a little bit just then, and it's important to note that we're not dealing with something as simple as a motion to dismiss standing for failure to simply state damages, but this is a case where there was an evidentiary hearing, and the burden for challenging my client's use of the property falls on the plaintiffs to show that there has been special damages that go beyond the general public at that hearing. They have to be specific in that, and the Zoning Board of Appeals correctly found that the testimony, and it was just testimony that was presented on this issue, was not enough, and Judge Bartsch did state it clearly in his order that it was just not enough as conclusory statements of hypothetical damages that may result from my client's use of the property, so I think without getting, before we even get to the legality of the use and those issues that have been discussed this afternoon, we have to look at the fact that plaintiffs cannot state damages to the extent that is required for the challenge to a property owner's use of a property, and the reason for you on that point that you've just been made, and also referring to page six of your brief, in which you assert that plaintiffs presented no evidence on appeal to the Zoning Board of Appeals to show that the claim damages were more than hypothetical. Didn't they call Ms. Albrecht, who was a realtor in the Rockford area for 20 years, and then she testified in her professional opinion that there will be a lot of people that will not want to move into that Westside neighborhood, and it will have a detrimental effect on property values? Judge, she did testify at the hearing. I'm quoting from your brief on what she testified. How is it that that's nothing more than hypothetical when we have a realtor with that vast experience rendering her opinion that the plaintiff's property values are damaged? What's hypothetical about that? With respect, Your Honor, even if it's beyond hypothetical, which we take the position that it's not, she's given an opinion that people will not want to move into the neighborhood, but she gives no reasons for that. Wait a minute. Isn't she testifying as an expert witness? So in medical malpractice case, when someone testifies about prognosis for recovery, is it an appropriate response to say, well, where's your evidence, doctor? I mean, these are expert witnesses, and I don't understand what it is you're saying when you say it's all hypothetical. That's what experts testify to in their opinion, isn't it? Well, of course, and if she's testifying as an expert... Isn't she testifying as an expert? Are you disputing that? I would suggest that there was nothing offered other than that she's been a realtor in Rockford for 20 years to suggest that she would be an expert as to that particular neighborhood or what... Okay, let's pause right there. What beyond that would a realtor, in order to express an opinion on property values or how they might be adversely affected, what else would she have to say that would satisfy your judgment on her being able to learn their expert opinion? Well, Your Honor, I'm not sure to what extent, if I'm being honest, that would be required. There's no market analysis, and I don't even... With respect, I don't think that's up to me to decide. The Zoning Board has the discretion whether to accept the expert's opinion or not. But what's the standard review for us? Whether it was clearly wrong in its judgment? Correct, Your Honor. Why isn't this clearly wrong to the extent that they, without any explanation, apparently as you are doing, say this is all hypothetical and we don't accept Ms. Albrecht's  Well, I think it's fair to look at the Zoning Board of Appeals judgment on the case as a whole and the presentation of evidence as a whole. This is one statement by one person who may or may not be determined an expert. And if we're using the analogy to a court case and a medical malpractice case, those experts have to be qualified to a higher degree than just simply stating, I'm a realtor, I have all this experience. We don't know how much. We don't know if she's even sold a house as a realtor. Were her qualifications questioned? They were not. In fact, she wasn't asked a single question, was she? She was not. And she just got up and testified that she was a realtor in the Rockford area for 20 years and said that in her professional opinion, that your facility would have a detrimental effect on the neighborhood and the home values. That if we show properties in that neighborhood, there'll be a lot of people that will not want to move into the west side neighborhood. If people do not want to move into the neighborhood, it stands to reason property values will decrease. The perfect subject of cross-examination. Instead, it stands unrefuted, does it not? That is correct, Your Honor. And I think the point here is that this is, even if we were to accept, and the Zoning Board was to accept this as an expert opinion, that is the one piece that was offered to show any kind of damages. And it's a general damage area. That's not, ma'am. I'm sorry, but that's not true. I'm sorry, Your Honor. You had other people testify who lived within 550 feet of the premises. They testified to the increased traffic. They testified to the crowds. They testified to people that were holding up signs. They testified to people that were swearing and using bad language. Isn't that true? That is true. Okay, so that wasn't the one piece of evidence. All I'm asking you to do is at least be open about the fact that there were additional witnesses who all testified to the detrimental impact of that type of facility in that highly densely populated residential location. Yes, Your Honor. And we acknowledge and we are not denying in our brief that these statements weren't made. What we're saying is that they don't legally fall under recognized special damages beyond that of the general public. First, because the realtor offering this testimony is speaking about the neighborhood generally or the area of town generally. This is not specific to these plaintiffs. And even moving beyond that, the noise and the traffic, the plaintiffs testified that this was caused, it was imposed by an organization that the plaintiff himself was a member of. Who said he never participated in any of those? Not those particular protests, but it is an organization he's a part of and was aware that they were. Now let's back it up a little bit. All of these things sound like the perfect things for cross-examination. There was no cross-examination and even more importantly, standing is a matter that you need to raise, correct? In a zoning issue like this challenging the use of a property, it's actually on the plaintiffs to show that they have the damages in order to bring this issue. Otherwise you have people in the case law state that the policy behind that is to prevent harassment of property owners, these vexatious lawsuits, simply because they don't like the use of the property or the property owner. And so in this particular circumstances, the burden would be on the plaintiffs to show that with some specificity at an evidentiary hearing that there were actually damages. And you raised the issue of standing initially, correct? The issue of standing was raised at the Zoning Board of Appeals hearing by the zoning officer himself. Campbell Villa, right? Yes. So the plaintiffs presented evidence, it was unrefuted, but for some reason now is considered unacceptable. I think the way that the evidence was interpreted by the circuit court, we believe was the correct way to interpret the Zoning Board's view of that evidence because- I'll take one other question on this. Looking to the case law on the subject about standing regarding zoning determinations, isn't the question whether to avoid people who are merely curious or concerned to not give them standing to intervene in an issue. But based upon the evidence here, and as Justice Staben pointed out, isn't this a rather different situation than having the objectors merely curious or concerned? Didn't they demonstrate that this is a situation adverse to their property values and their interests as nearby homeowners? Your Honor, we don't believe that they did, no. Okay. Okay, Ms. Hall, you are out of time. At this time, Mr. Rubin, you may proceed with your argument. Thank you, sirs. Hey, please, the court, again, I'm Jacob Rubin. I'm representing the City of Rockford and the Rockford Zoning Board of Appeals. The focus of my discussion today was to be on the issue of the conforming use. I do, if your honors will accept it, I would like to comment on a few things that have been discussed. One, specifically, what the court termed the testimony of Kathy Albrecht as an expert witness. As much as an opportunity to just clarify the record, I do want your honors to know she was not called as a witness. She was certainly not called as an expert witness by the appellants. What does that mean? I do believe so. That means that's why it wasn't her testimony based on her expertise? I don't know, and the reason we don't know is because she was not subject to cross- Well, wait a minute. I'm looking at her testimony, and she has expertise. How do I know that and you don't? She says she has expertise, your honor. What I- Did you dispute that? I'm sorry? Did you dispute that and cross-examine her or challenge it in any way? Ms. Albrecht was not subject to cross-examination. She was not called as a witness. She testified at the hearing as an objector. The standard practice is to not question objectors. Mr. Rubin, in fact, one of the board members did ask people questions who came up to testify as interested persons, and in fact, Mr. Capovella himself said that the rules of the ZBA allows any person to speak. However, when they did, they were called forward. They were sworn as witnesses, were subject to objections being lodged to their testimony and questioning by the board if they chose to do so. That, to me, sounds like testimony. Did you dispute that, your honor? Counsel, are you arguing we should disregard it? Is that your position? I think you should give it a little weight, your honor. Why? Because, again, she was an objector. She was not called as a witness, and she didn't provide any substantive information. She just simply indicated people won't want to come here. That's not enough to reach special damages. Well, I recalled it from Ms. Hall's brief, the substantive information Ms. Albrecht provided. When you're telling us she didn't provide anything, why doesn't that count? A realtor with 20 years' experience said this is going to have a damaging effect on property values in that area. I think there needs to be a why. Pardon? I think there needs to be a why. Explain why. She's an expert. That's what cross-examination is for. I mean, that's the nature of expert testimony, counsel. She's testifying as an expert. Here's my expertise, and this is what's going to happen. Well, why do you think that? Because I've been doing this business for 20 years, and I understand property values in this area. What's abstract about that? We don't believe she was called as a witness, as an expert witness, Mr. Julia. Well, if she's not a witness, then why is her testimony in this record? Why did the board hear it? Why wasn't it stricken? Why is she put under oath? Your own Zoning Board of Appeals rules of procedure provide for any interested party to appear on their own behalf or through a representative, as well as any property owners entitled to notice any legal objector. Mr. Capovilla himself said that any person was allowed to speak, and once they came to speak, they were then sworn in as witnesses, and then as witnesses were obviously subject to objections or cross-examination. At least one of the people that was called was questioned a number of times, several different times by one of the board members. So clearly, the board knew they had the right to question these witnesses if they choose, and nobody has appeared to refute their testimony. Your Honor, my recollection is that Mr. Rylat was the witness who was cross-examined, and he was called as a witness by appellants. But I can move on. There was another gentleman who was called as one of these interested parties, and one of the board members kept asking him what relevance was his testimony, and continued asking him that several different times. That's what we call cross-examination. MR. RYLAT Well, counsel, going to the merits of this case, this is a special use permit that was given for Dr. Chen and the other doctor to, under limited circumstances, live in this residence and see a few patients as they live there. And now we have Dr. Christensen who says, I want the special use permit to apply to me as well, even though none of that is the case. Dr. Christensen doesn't live there. The person who does live there is an employee. The number of people involved aren't the same. I mean, going back to the question I asked earlier, how wrong does the Zoning Board of Appeals have to be factually in its conclusion that this is the same or adequate under the special use permit for us to reverse? MR. RYLAT And that's where I do agree with Ms. Mannix, Your Honor. It's clearly erroneous. And we just dispute that the use is—  Why is it clearly erroneous, counsel? MR. RYLAT Your Honor, because it's an evidentiary hearing of an administrative agency. It's a mixed question of fact and law.  What aspect of the use of these premises by Dr. Christensen remotely comports to how it had been used for the decades earlier by the two other physicians? Is there anything that they're using it now that comports in any way to how it was used previously? MR. RYLAT Yes, it's a medical use. It was a medical use for the 40 to 60 years prior to Dr. Christensen's purchase of the property. It was a chiropractic use. And I think you'd find that both chiropractic boards and medical boards would dispute you on the idea that the practice of chiropractic is the practice of medicine. MR. SCHROEDER But even so, counsel, let's assume that Dr. Christensen, he's going to be performing abortions himself. Doesn't he have to live there? And aren't all the other aspects of that special use permit, aren't they applicable to him and how he would be using this residence? MR. RYLAT Your Honor, my understanding is that Dr. Christensen does not live there, that he owns the building and does not work out of the building.  Then how does that comply with the special use permit that as it had been used earlier by the two prior physicians for decades?  MR. SCHROEDER Yeah. The zoning officer, Capovilla, testified at the hearing that in his opinion, based on all the information he had, that it was irrelevant whether the person lived there or not. The fact that there was an employee who lived in the residence and a non-related employee could work there as well.  In fact, counsel, isn't it true that Dr. Capovilla said that he was an employee and that it's actually owned by the corporation? MR. RYLAT That's not my understanding. I'm sorry.  Dr. Christensen, I'm sorry.  That's not my understanding. I'm sorry.  Okay. And if I'm mistaken, I apologize.  So what's your opinion, counsel? Is this the same thing or, you know?  Yes, Your Honor.  The old story of, what is it, Abe Lincoln's story. If you call a horse's tail a leg, how many legs do you have? Well, he's still just got four, however much you want to call it. It seems to me that it's hard to understand how the special use permit, which was so restrictive in so many ways, could apply in this case when the only thing in common is, and let's give that it's what we'll call medical procedures being formed in the residence now as they were before. Nothing else applies, does it? I disagree. I do, respectfully. Zoning Officer Capovilla, during his testimony, at times listed similarities, things that I believe that he found similar. Well, you tell me, what are the similarities on this record other than medical procedures are being formed? Well, let's concede that. Medical procedures being formed, what are the similarities in this record between how the situation is, who's living there, what they're doing with Dr. Christensen as it was for the decades earlier? One, for example, would be the space used. Council indicated that only 20% was used under the previous uses, which was a requirement at the time of the special use permit for the home occupation. But for the record, the evidence presented is that Dr. Chin used the entire first floor for 40 consecutive years. That was 40 consecutive years of the City of Rockford. Answer. 40 consecutive years of the City of Rockford reviewing and renewing the special use permit, so understanding exactly how it's being operated. Landscaping, parking, building size, scope of the medical use, number of employees, number of patients, hours of operation, lack of any noise produced. I think those are similarities between the current use and the last 40 to 60 years. Thank you. Okay. Thank you, Mr. Rubin. Ms. Mannix, rebuttal argument. You're on mute. You're muted, Ms. Mannix. I apologize. I'm sorry. My recollection of the record is there was no evidence that Dr. Chin used the entire first floor. My recollection is that he used one room with a chiropractic table in which he performed his chiropractic. Kathy Albrecht was even better than an interested party witness, or an expert called by a witness. I'm sorry, an expert called by a party. She was actually a volunteer. She was an independent witness who didn't have an ax to grind with anybody who came in and gave her testimony about the depression of property values caused by Dr. Christensen's proposed use. We absolutely agree the record demonstrates that Dr. Christensen's use through his two employees living at the property, or one working and one living at the property, is completely different than what was found permissible when Dr. Chin was using the property. There was essentially no evidence in the record about what Dr. Daub was up to, but certainly no evidence substantiating any suggestion that Dr. Daub was using the property in a manner consistent with what Dr. Christensen wanted to use the property. Again, we've demonstrated, and we've addressed this in our briefs, that the current use of the property violates the SUP in numerous respects. There was no evidence that there were some variations not included in the SUP of legally non-conforming uses, which was what Mr. Capovilla resorted to every time it was questioned and had no basis for explaining why the current use is similar to the prior uses. Counselor, I'm not sure I understand the point you were just making. Could you repeat that? Sure. The record is devoid of any basis for allowing the uses by Dr. Christensen. To the extent that anybody at the hearing attempted to justify it, it was Mr. Capovilla who testified whenever he was questioned about something that was allowed that wasn't part of the SUP, the Special Use Permit. He said, oh, well, Dr. Chin was allowed legally non-conforming use, but there was no testimony or evidence that Dr. Chin had the Special Use Permit plus was allowed ongoing legally non-conforming uses that somehow supplemented the terms of the Special Use Permit. In fact, the Special Use Permit was subject expressly to the requirements of the Home Occupation Ordinance, which there's really no dispute that Dr. Christensen's practice violated in numerous respects. Specifically, Ms. Mannix, on that point, each SUP that was issued, if they were issued, we don't know since we don't have either the original or the subsequent one to Dr. Chin, but they're all subject to the other restrictions and conditions of the Home Business Ordinance, correct? Absolutely, Your Honor. And the Special Use Permit Ordinance, obviously. Yes, Your Honor. One of the things expressly excluded from a Special Use Permit under any circumstances is a medical clinic. That's correct, Your Honor. Dr. Christensen's own material identifies it as a medical clinic. Yep, that is correct, Your Honor. No one has disputed the fact that he's opening a medical clinic. That is correct, Your Honor. Those are expressly excluded under the ordinance. Correct, Your Honor. Did the Zoning Board address that, Counsel? The point Justice DeArmond is now making? No, Your Honor. Really, they just looked at, they just embraced the testimony of that essentially everything that wasn't, again, the idea that there was a Special Use Permit and then everything else was a previously established legally nonconforming use that and that all these failures to comply with the SUP or any other prior use somehow fell within that catch-all. Ms. Mannix, you are out of time. Do either of my colleagues have any additional questions? No, thank you. All right. Thank you. Thank you all. The case will be taken under advisement and a written decision will be issued.